In the Matter of the Application of the NEW YORK STATE BOARD OF MEDIATION for Mediation of a Labor Dispute between the ROBINS DRY DOCK AND REPAIR COMPANY, a Subsidiary of the TODD SHIPYARDS CORPORATION, and the Former Company's Employees.

Supreme Court, Special Term, Kings County, September 9, 1937.

*John J. Bennett, Jr., Attorney-General,* and *Henry Epstein, Solicitor-General,* for the State Board of Mediation.

*Cullen & Dykman* and *Maximilian Moss,* for the Robins Dry Dock and Repair Company and the Todd Shipyards Corporation.

STEINBRINK, J.   This is a motion to vacate subpœnas issued by the New York State Board of Mediation and served upon officers of the Robins Dry Dock and Repair Company (hereafter referred to as Robins) and the Todd Shipyards Corporation (hereafter referred to as Todd) which subpœnas recite upon their face that they were issued pursuant " to the authority granted under section 753, chap. 594, of the Laws of 1937." The events which led to the

issuance of the subpœnas are as follows: For some time past there has been a labor dispute between Robins (a subsidiary of Todd) and its employees. On August 12, 1937, the chairman of the Mediation Board addressed a letter to Robins expressing the Board's concern over the continuance of the strike, stating its understanding that the only issues in controversy are questions of organization and representation of employees, suggesting that pending determination of the controversy by the National Labor Relations Board, before whom the matter was then pending, there might be mediation, and inviting a conference. The invitation was refused. Then followed issuance of the subpœnas.

Section 750 of article 21 of the Labor Law declares that it is the public policy of the State that the voluntary mediation of labor disputes be conducted under the guidance and supervision of a governmental agency. To that end the Mediation Board was established. Section 752 sets forth the objectives of the Board, namely, " to take such steps as will most effectively and expeditiously carry out the policy declared in section seven hundred fifty." Section 753, subdivision 1, in defining the powers and duties of the Board, recites that when a labor dispute exists or is threatened the Board may, and upon the direction of the Governor must, " take such steps as it may deem expedient to effect a voluntary, amicable and expeditious adjustment and settlement of the differences and issues between employer and employees." The Board is charged with the duty to arrange for a conference between disputants, to invite the attendance of disputants at such conferences, to discuss with the disputants grievances and differences, and to assist in negotiating and drafting agreements for the settlement of such grievances and differences.

Subdivision 2 grants to the Board power " to hold public or private hearings at any place within the State, subpœna witnesses and compel their attendance." This subdivision is to be construed in the light of the provisions which precede it. It will be noted that throughout the statute it is the voluntary character of the submission to mediate that is emphasized. Such words as " voluntary mediation," " voluntary, amicable and expeditious adjustment and settlement of the differences," " invite the disputants * * * to attend * * * conference," " to assist in negotiating and drafting agreements," all point to the plain legislative desire to provide governmental machinery under the supervision and direction of which voluntary mediation may be effected and negatives any notion of the use of coercion by the Board. Jurisdiction of the Board is invoked only upon voluntary submission to mediation. It is only then that the power of the Board to subpœna witnesses

comes into being. Compulsory attendance of disputants is inconsistent with the voluntary character of the statute.

The Attorney-General argues that since no legislative intent is observed in the statute to restrict the inquiry power of the Board that power must be held to exist. Investigatory power may not so easily be read into the statute. Significant on the question of legislative intent is the clause in the Labor Relations Act (Laws of 1937, chap. 443, § 708), passed at the same session of the Legislature, in which investigatory power is expressly granted to the Labor Relations Board. Likewise, in the Minimum Wage Standards for Women and Minors Act (Laws of 1937, chap. 276, § 553) such power is expressly granted. The Legislature knew how to grant the power, and it is fair to assume that its failure to do so here was not inadvertent. On the contrary, there existed a compelling reason for its omission. Section 21, subdivision 5, of the Labor Law vests in the Industrial Commissioner power to " inquire into the cause of all strikes, lock-outs and other industrial controversies, and endeavor to effect an amicable settlement thereof, and may create within the Department a Board to which a controversy between an employer and his employees may be submitted for mediation and arbitration." In connection therewith, section 39 of the Labor Law grants to the Industrial Commissioner and other officers of the Department of Labor power to conduct hearings and issue subpœnas. Since the power to investigate into labor disputes already rests in the Industrial Commissioner there was no occasion for subjecting disputants to the jurisdiction of both the Labor Department and the Mediation Board when the subject of jurisdiction is identical. The Legislature in all probability contemplated co-operative action between the Board and the Industrial Commissioner before disputants were invited to voluntarily submit to mediation.

This court is of the belief that the obvious intent of the statute is to confer power upon the Board to compel the attendance, not of parties themselves, but rather of necessary witnesses at such hearings as may be subsequently conducted so that the mediation which has been voluntarily submitted may thereby be facilitated. The motion is granted.